JOSEPH SCHORR v. MINNESOTA UTILITIES COMPANY.
JAMES SCHORR v. SAME.[1]

September 30, 1938.

Nos. 31,647, 31,648.

[1]Reported in 281 N. W. 523.

*Charles H. Weyl, Lystad, Mantor & Day,* and *Joseph F. Cowern,* for appellant.

*William R. Kueffner* and *Neumeier & Torinus,* for respondents.

HOLT, JUSTICE.

In each case defendant appeals from the order denying its motion in the alternative for judgment notwithstanding the verdict or a new trial.

The two actions grow out of the same accident out of which the preceding case of Ekdahl v. Minnesota Utilities Co. 203 Minn. 374, 281 N. W. 517, arose. They were tried in the court below as one case and so submitted on appeal. James Schorr, by his father and natural guardian, sued to recover the damages sustained when shocked and burned on the evening of May 8, 1936, through the alleged negligence of defendant, and Joseph Schorr for the consequential damages he suffered on account of his son's injury. Although these two cases were tried several weeks prior to the trial of the Ekdahl case and to a different jury, the same witnesses testified herein as to the same facts as were testified to there, touching the negligence of defendant and the contributory negligence and violation of law of Warren and Jim. So the facts as stated in the Ekdahl case may be referred to for the purposes of this decision. The opinion in the Ekdahl case must also be applied to the issue of defendant's negligence herein and to the issue of Jim's contributory negligence, and so doing it must follow that the court did not err when denying directed verdicts, nor when judgments *non obstante veridicto* were denied.

There remain to be considered the errors assigned as grounds for a new trial. In respect to rulings on the reception and exclusion

of evidence, we think no error occurred which justifies another trial. Defendant's counsel concedes that a new trial should not be granted for error in admitting or excluding evidence unless substantial prejudice appears to the defeated party. 5 Dunnell, Minn. Dig. (2 ed. & Supps.) §§ 7180, 7181. But he contends these cases are close as to liability and hence slight evidence might change the result. We cannot view either the issue of defendant's negligence or Jim's contributory negligence in that light. In fact, it is difficult to see any basis for claiming contributory negligence on Jim's part—his touching the cable was only for the purpose of saving defendant's property from injury. Coming then to the specific rulings, we think the court properly permitted plaintiff to show the customary practice of insulating noncurrent metallic wires on such poles that came within reach of persons standing on the ground. It was not error to receive in evidence the shoe and trousers Jim wore, showing the holes burned by the current, even though counsel in open court admitted that Jim received burns. Assignments 10 and 11 are directed against the prying questions exhibiting the usual zeal of counsel to have the jury consider every possible injury likely to result from an accident. It would have been better if that zeal were somewhat curbed; but it was so obvious that the thin skin covering third degree burns is liable to bruise and break so as to afford ready entrance to germ infection that the jury could infer that without the opinion of the medical experts, and hence it cannot be said that the answers expressing such opinion harmed defendant. The answer that certain guy wires on this pole had insulators, which the court allowed to stand, might properly have been stricken. The guy wires had nothing to do with the injury to Jim. However, it did show that those who erected the pole had some desire to prevent the deadly current from escaping.

The assignments of error 13 and 16 relating to the charge we think not well taken. Defendant requested these instructions:

"I. Before you can find a verdict for the plaintiffs you must find that the defendant should reasonably have anticipated that boys might do what was done in this case.

"II. Before there can be a recovery you must find that the instrumentality and the circumstances constituted an implied invitation to the boys to do what they did.

"III. If the accident was the result of the act of James Schorr or Warren Ekdahl, or both of them, without negligence on the part of the defendant, your verdict must be in favor of the defendant.

"IV. The defendant is not required as a matter of law to so fasten or secure the cable to the pole that boys could not displace such fastenings.

"V. It is the law that every person who shall wilfully—disconnect, displace—ground or in any way interfere with any pole, cable or wire legally erected, put up or strung—used in the producing, generating or transmitting of the electric light, heat or power, or who shall aid, agree with, employ or conspire with any other person to do any of said acts, shall be guilty of a misdemeanor.

"VI. If you find that James Schorr was violating this law at the time he was injured, then he cannot recover."

All of these requests except II were incorporated in the charge at such place as the court deemed appropriate, and some were repeated in different language, while a phrase was added to others. The issues of negligence and of contributory negligence were very fully and fairly submitted. Defendant's request II was substantially covered in different form. We think the repetitions and additions to which assignments 13 and 16 are directed were either proper or innocuous, and that counsel is overly critical in pressing those assignments.

The most disturbing feature to us is the size of the verdicts. There is nothing in the record to incite the jury to passion or prejudice. Plaintiffs had two medical experts, defendant one. Apparently all three gave their opinions to the best of their ability. One of the doctors called by plaintiffs had cared for Jim from the time he was resuscitated, having attended him professionally over 90 different times, and had had better opportunity than the others to observe the boy. His entire examination refreshingly shows a disposition not to overstate Jim's injuries and the results thereof. He time and

again refused to follow the promptings or suggestions of plaintiffs' counsel as to serious probabilities that might flow from the injuries. But, even though satisfied that the jury were not influenced by passion or prejudice, the verdicts seem to us large. We do not have the opportunity, as had the jury and court below, to see the burns, nor is this court better qualified to estimate damages in cases of this nature than the jury. The jury awarded Jim $10,000, and his father $1,750. The doctor testified that the reasonable value of his services was $400; leaving $1,350 to compensate the father for loss of Jim's services and his support and care during his illness. We cannot hold this excessive. The trial court granted a new trial in Jim's case unless consent was given to reduce the verdict to $8,500. Consent was given. With some hesitancy we sustain the action of the trial court with respect to this verdict also.

The orders are affirmed.

[1]Reported in 281 N. W. 364.